UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>SHAOHUA (MICHAEL) YIN,<br><br>Defendant, and<br><br>LIZHAO SU, ZHIQING YIN, JUN QIN, YAN ZHOU, and BEI XIE,<br><br>Relief Defendants. | [Case No.]<br><br>**DECLARATION OF FINOLA H. MANVELIAN IN SUPPORT OF EX PARTE APPLICATION FOR AN ORDER TO SHOW CAUSE, FOR AN ASSET FREEZE, AND FOR OTHER RELIEF** |

I, Finola H. Manvelian, in accordance with 28 U.S.C. § 1746, declare the following:

1. I am a member of the bar of the State of California. I am employed as an Assistant Regional Director in the Division of Enforcement in the Los Angeles Regional Office of the Securities and Exchange Commission (the "SEC"), the Plaintiff in this matter. My official duties include participating in fact-finding inquiries and investigations to determine whether federal securities laws have been violated and assisting in the SEC's litigation of enforcement actions.

2. I am assigned to the SEC's investigation into trading in the securities of DreamWorks Animation SKG, Inc. ("DreamWorks") in advance of the company's announcement on April 28, 2016 that it would be acquired by Comcast Corporation ("Comcast"). As a result of that investigation, the SEC has authorized this action seeking the

1

relief specified in the Complaint and the SEC's *Ex Parte* Application for an Order to Show Cause, for an Asset Freeze, and for Other Relief.

3. In connection with that investigation, I have, among other things, reviewed trading data for the securities in question; public information relating to the issuers of those securities, including website content, news releases, and securities filings; records from the brokerage firms for particular accounts, including account opening documents (including identification documents and other materials containing employment and personal information about the named accountholders), account statements, customer identification, profile, and contact information, communications with account holders, trade blotters, wire transfer information, and records of electronic customer logins for certain brokerage statements; and publicly available information relating to the Defendant and Relief Defendants.

4. I make this declaration based on my personal knowledge and based upon my review and analysis of the records referenced above and other materials and sources developed in the course of the investigation.

**A.     The DreamWorks Acquisition**

5. DreamWorks is an animation studio that creates feature films, television specials and series and live entertainment properties. It is a Delaware corporation with its principal place of business in Glendale, California. Securities in DreamWorks are publicly traded under the ticker DWA on NASDAQ.

6. On April 26, 2016, the Wall Street Journal, among other publications, reported that Comcast was in talks to buy DreamWorks for more than $3 billion. Attached as **Exhibit 1** is a true and correct copy of a Wall Street Journal article dated April 26, 2016, at 11:48 p.m. Eastern Time titled "Comcast in Talks to Buy DreamWorks Animation for More Than $3 Billion – Update" by Ben Fritz, Dana Mattiolo, and Erich Schwartzel.

7. On April 28, 2016, DreamWorks publicly filed a Form 8-K announcing its entry into an Agreement and Plan of Merger with Comcast. Attached as **Exhibit 2** is a true and correct copy of the Form 8-K, omitting exhibits. Attached as **Exhibit 3** is a true and correct copy of the press release, also issued April 28, 2016, that was one of the exhibits to the Form 8-K.

8. On May 23, 2016, DreamWorks filed a Preliminary Information Statement, Schedule 14C, relating to the proposed merger with Comcast that, among other things, includes a background section describing the events leading up to the merger. Attached as **Exhibit 4** is a true and correct copy of an excerpt of the Schedule 14C filed on May 23, 2016, containing the merger background section.

9. DreamWorks, through its counsel, confirmed to the SEC staff that the entity referred to in **Exhibit 4** as the "PE Firm" is PAG Asia Capital. PAG Asia Capital is an Asia-focused private equity fund manager based in Hong Kong and Shanghai, China.

10. On February 5, 2016, PAG Asia Capital signed a confidentiality agreement with DreamWorks that is dated February 7, 2016, covering discussions between PAG Asia Capital and DreamWorks regarding a potential merger or acquisition. Attached as **Exhibit 5** is a true and correct copy of this agreement.

11. From approximately February 9, 2016 through April 27, 2016, PAG Asia Capital was engaged in discussions with DreamWorks regarding a potential acquisition of DreamWorks by PAG Asia Capital. Attached as **Exhibit 6** is a true and accurate copy of a chronology of key events relating to these discussions that was prepared by counsel to PAG Asia Capital and submitted in response to a FINRA inquiry.

12. On April 11, 2016, Comcast learned from its outside counsel that the Board of Directors of DreamWorks had formed a special committee to consider a potential merger and acquisition transaction. Attached as **Exhibit 7** is a true and accurate copy of materials provided by Comcast to the SEC regarding this communication. On information and belief, and based on the SEC staff's review of contemporaneous media reporting of DreamWorks' eventual sale, information concerning DreamWorks' formation of a special committee to pursue its sale was not widely disseminated at that time.

13. On April 15, 2016, Comcast and DreamWorks signed a confidentiality agreement covering discussions between Comcast and DreamWorks regarding a potential merger or acquisition. Attached as **Exhibit 8** is a true and correct copy of this agreement.

B.      **The Defendant, Relief Defendants and Their Brokerage Accounts**

14. Following the news leak and subsequent announcement of the Comcast acquisition of DreamWorks, SEC staff obtained, pursuant to Section 17(a) of the Securities Exchange Act of 1934 and the rules thereunder, various records for accounts whose trading in DreamWorks leading up to the announcement appeared to be suspicious. These documents were produced by Interactive Brokers, LLC ("Interactive Brokers"), a registered U.S. broker dealer headquartered in Greenwich, Connecticut, Fidelity Brokerage Services LLC ("Fidelity"), a registered U.S. broker dealer headquartered in Smithfield, Rhode Island, and E*Trade Securities LLC ("E*Trade"), a registered U.S. broker dealer headquartered in New York, New York.

15. Attached as **Exhibit 9** is a true and correct copy of the account summary information produced by Interactive Brokers for Account XXXX9828 opened on October 3, 2013 in the name of **Relief Defendant Lizhao Su** ("Su"), who is described in the account

documents as a 78-year-old retiree who resides in Beijing, China. The document further represents Su's net income to be in the range of $100,000 to $150,000, with a net worth of $1 to $5 million. Upon information and belief, Su is M. Yin's mother.

16. Attached as **Exhibit 10** is a true and correct copy of the account opening documents produced by E*Trade for account number XXXX-2058 opened on October 3, 2013 in the name of Su.

17. Attached as **Exhibit 11** is a true and correct copy of the account summary information produced by Interactive Brokers for account number XXXX9198 opened on May 28, 2015 in the name of **Relief Defendant Zhiqing Yin** ("Z. Yin"), who is described in the account documents as a 79-year-old retiree who resides in Beijing, China at the same address as the one given in **Exhibit 9** for Su. The documents further represent Z. Yin's income to be in the range of $250,000 to $500,000, with a net worth of $5 to $10 million. Upon information and belief, Z. Yin is M. Yin's father.

18. Attached as **Exhibit 12** is a true and correct copy of the account summary information produced by Interactive Brokers for account number XXXX8920 opened on June 16, 2015 in the name of **Relief Defendant Jun Qin** ("Qin"), who is described as a 46-year-old Quality Department Manager at Legrand (Beijing) Electrical Co., Ltd., who resides in Beijing, China. The documents also further represent Qin's income to be in the range of $150,000 to $250,000, with a net worth of $1 to $5 million.

19. Attached as **Exhibit 13** is a true and correct copy of the account summary information produced by Interactive Brokers for account number XXXX1566 opened on January 18, 2015 in the name of **Relief Defendant Yan Zhou** ("Zhou"), who is described as a 34-year-old teacher at Beijing Menghuanxuanly International Education Advisory Co., Ltd.,

who resides in Beijing, China. The documents further represent Zhou's income to be in the range of $150,000 to $250,000, with a net worth of $500,000 to $1 million.

20. Attached as **Exhibit 14** is a true and correct copy of the account summary information produced by Interactive Brokers for account number XXXX3862 opened on February 17, 2016 in the name of **Relief Defendant Bei Xie** ("Xie"), who is described as a 29-year-old section member at PetroChina Coalbed Methane Co., Ltd., who resides in Beijing, China. The documents further represent Xie's income to be in the range of $250,000 to $500,000, with a net worth of $1 to $5 million.

21. Through electronic login data and account documents produced by Interactive Brokers, we identified an additional individual, **Defendant Shaohua (Michael) Yin** ("M. Yin"), who appears to be connected to the accounts described above.

22. Attached as **Exhibit 15** is a true and correct copy of the account opening document produced by Fidelity for account number XXX-XX9920 opened on March 20, 2000 in the name of M. Yin, who is described as an engineer at Microsoft living in Redmond, Washington at the time.

23. Attached as **Exhibit 16** is a true and correct copy of the account opening document produced by Fidelity for account number XXX-XX2962 opened on March 20, 2000 in the names of M. Yin and Jing Wang, whom I believe to be M. Yin's wife.

24. Attached as **Exhibit 17** is a true and correct copy of the account opening document produced by Fidelity for account number XXX-XX1290 opened on October 4, 2002 in the name of M. Yin. The account application is dated February 28, 2003, but Fidelity explained that this is a stock plan account that was likely opened by his employer prior to his individual paperwork being completed.

25. Attached as **Exhibit 18** is a true and correct copy of the account opening document produced by Fidelity for account number XXX-XX3404 opened on November 12, 2007 in the name of M. Yin, who is described on the account application as a Chinese citizen employed as an investor at Warburg Pincus in Texas. The email address listed for M. Yin on the application has a domain name of wharton.upenn.edu, which is associated with the Wharton business school at the University of Pennsylvania.

26. Each of M. Yin's account applications to Fidelity give his citizenship as overseas or specifically China and his birthdate as December 31, 1972. While none of M. Yin's accounts traded in DreamWorks, there are several connections between him and five Interactive Brokers accounts that did trade highly profitably in DreamWorks in April 2016.

27. Attached as **Exhibit 19** is a true and correct copy of an email, including attachments, dated November 5, 2015 from Su (email address lizhao.su@gmail.com) to Interactive Brokers attaching "address proof documents" that Interactive Brokers had requested. One of the attachments is a November 3, 2015 HSBC bank statement for an account in the name of Lizhao Su (account number XXX-XXXXX5-833) showing a deposit on October 14, 2015 from Shaohua Yin (listed as Yin Shaohua) in the amount of $100,000 Hong Kong dollars.

28. Attached as **Exhibit 20** is a true and correct copy of an account statement dated May 31, 2016, for Fidelity Accounts XXX-XX3404 and XXX-XX1290 listing M. Yin's address as 663 Georgia Avenue, Palo Alto, California 94306. This is the same address associated with an internet protocol address that was repeatedly used to log in to the five Interactive Brokers accounts in January and February 2016, and again in January 2017. *See* Declaration of Stephen Haupt at ¶ 9f, 9n.

29. Attached as **Exhibit 21** is a true and correct copy of a property record showing the owners of 663 Georgia Avenue, Palo Alto, California 94306 are Jing Wang and Huailian Zhang.

30. Attached as **Exhibit 22** is a true and correct copy of the account opening document produced by Fidelity for account number XXX-XX0343 opened in 1998 in the name of Jing Wang, who describes Huailian Zhang as her mother and Shuhuan Wang as her father in the beneficiary designation.

31. Attached as **Exhibit 23** is a true and correct copy of a deposit record from Fidelity Account XXX-XX2962, an account held by M. Yin and his wife, showing a deposit from M. Yin's bank account at HSBC and listing his address in the Shunyi district of Beijing, China.

32. Attached as **Exhibit 24** is a true and correct copy of a Uniform Application for Investment Adviser Registration and Report by Exempt Reporting Advisers ("Form ADV") filed with the SEC by Summitview Capital Management Limited ("Summitview"), on February 29, 2016, which lists M. Yin as a partner at Summitview and also a partial owner of Beijing Yuanshan Jingxing Investment Consultancy LLC, which provides investment consultancy services (including research services) to Summitview.

33. Attached as **Exhibit 25** is a true and correct copy of a profile for Shaohua (Michael) Yin from the website yatedo.com, accessed on June 21, 2016, that indicates he has an MBA in Finance from the Wharton School of Business at the University of Pennsylvania, and has worked in the financial industry for over 10 years, first with UBS Investment Bank and then with Warburg Pincus Asia LLC, a private equity firm, before joining Summitview Capital in 2011.

**C. Use of Email by the Defendant and Relief Defendants**

34. The Defendant and Relief Defendants have email accounts associated with their brokerage accounts, as described in **Exhibits 9-15, and 32** and listed in the following table:

| Full Name | E-mail Address from Brokerage Records |
|---|---|
| Jun Qin | maxqin0919@hotmail.com |
| Lizhao Su | lizhao.su@gmail.com |
| Bei Xie | xiebei0311@sohu.com |
| Shaohua (Michael) Yin | yinmic@gmail.com |
| Zhiqing Yin | zhiqingyin@hotmail.com |
| Yan Zhou | 579797@qq.com |

35. In addition, the Defendant and some of the Relief Defendants have sent and/or received emails from these accounts to their broker, including Su's November 2015 email to Interactive Brokers from lizhao.su@gmail.com, which is referenced above and attached as **Exhibit 19.**

36. Attached as **Exhibit 26** is a true and correct copy of an email produced by Interactive Brokers dated June 15, 2015 from Jun Qin at maxqin0919@hotmail.com to Interactive Brokers providing employment information, including a copy of his business card.

37. Attached as **Exhibit 27** is a true and correct copy of an email produced by Interactive Brokers dated April 22, 2016 from Interactive Brokers to Lizhao Su at lizhao.su@gmail.com providing an exposure fee notice for her account.

38. Attached as **Exhibit 28** is a true and correct copy of an email produced by Interactive Brokers dated February 4, 2016 from Xie Bei at xiebei0311@sohu.com to Interactive Brokers providing documents confirming her address, including an HSBC bank

statement dated January 19, 2016 for account number 926-11196-050.

39. Attached as **Exhibit 29** is a true and correct copy of an email produced by Fidelity dated May 12, 2015 to M. Yin at yinmic@gmail.com from Fidelity sending M. Yin a "Foreign Customer Information Questionnaire."

40. Attached as **Exhibit 30** is a true and correct copy of an email produced by Interactive Brokers dated April 22, 2016 from Interactive Brokers to Zhiqing Yin at zhiqingyin@hotmail.com providing an exposure fee notice for his account.

41. Attached as **Exhibit 31** is a true and correct copy of an email produced by Interactive Brokers dated May 7, 2015 to Yan Zhou at 579797@qq.com issuing a margin call for her account.

D. **Risk of Dissipation**

42. On February 3, 2017, the criminal authorities executed a search warrant at the San Jose International Airport, *In the Matter of the Search of IN RE FEDERAL CRIMINAL INVESTIGATION CASE NUMBER: 17 70135 NC*, to search M. Yin's mobile phone for possible evidence of insider trading. I was advised that M. Yin asked an FBI agent if his accounts would be frozen.

43. If Defendant and Relief Defendants learn of this action prior to the Court granting a temporary asset freeze, the SEC staff believes there is a substantial risk that the funds would be transferred offshore in the interim thereby denying the SEC the ability to obtain effective relief.

E. **Alternative Service**

44. I am advised by the staff of the SEC's Office of International Affairs that since January 2012, the SEC has sent 95 service packages to China under the Hague Service Convention, of which only 15 have been served, while 43 have been returned as not being

able to be served, and 37 have neither been served nor returned. For those that were actually served, the time for service was generally three to nine months.

45. Attached as **Exhibit 32** is a true and correct copy of an account list provided by Fidelity on February 1, 2017, identifying Fidelity account XXX-XX2962 for M. Yin and Jing Wang as having three email addresses: yinmic@gmail.com; 251712349@qq.com; and Lianhuan96@gmail.com. The three accounts in the name of M. Yin list an email address of yinmic@gmail.com. The three accounts in the name of Jing Wang list the email addresses of 251712349@qq.com and Lianhuan96@gmail.com.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 7, 2017

_____
FINOLA H. MANVELIAN