**EXHIBIT 6**

# EXHIBIT B-1

Listed below is a written chronology setting forth the dates and descriptions of significant meetings, communications, events and developments related to the potential PAG-DWA transaction prior to the public dissemination of the Corporate Disclosure.

| Item | Date | Description |
|---|---|---|
| 1. | Dec 7, 2015 | A dinner meeting was held between Messrs. Weijian Shan ("Shan"), Kevin Xu and Jack Li of PAG Asia Capital and Messrs. Wang Yonghong and David Wu of Zhonghong Group, during which the parties discussed the possibility of exploring a deal involving DWA. Such discussions were preliminary in nature and no specific pricing terms were discussed. |
| 2. | Feb 1, 2016 | PAG Asia Capital's project team members and the representatives of Zhonghong Group further discussed certain preliminary deal parameters for a possible strategic transaction involving DWA. |
| 3. | Feb 5-7, 2016 | On February 5, PAG Asia Capital executed DWA's confidentiality agreement pursuant to which (a) PAG Asia Capital agreed to keep confidential the fact that discussions regarding a possible transaction between PAG Asia Capital and DWA occurred or would occur and (b) PAG Asia Capital agreed to maintain the confidentiality of any non-public materials provided by DWA to PAG Asia Capital in connection with its evaluation of the possible transaction and agreed to strict standstill provisions. DWA countersigned the agreement on February 7, 2016 |
| 4. | Feb 9, 2016 | PAG Asia Capital (Shan) met with DWA's Jeffery Katzenberg in Los Angeles, California to discuss a potential transaction with PAG Asia Capital and Zhonghong Group. |
| 5. | Feb 17, 2016 | PAG Asia Capital and Zhonghong Group executed a non-binding framework agreement (without any reference to price) to jointly pursue a possible investment transaction involving DWA. |
| 6. | Feb 20, 2016 | PAG Asia Capital (Shan) and DWA (Fazal Merchant) conducted initial pricing discussions ($31 per share) over the telephone. |
| 7. | Mar 6, 2016 | PAG Asia Capital (Shan) and DWA (Fazal Merchant) conducted further pricing discussions ($35 per share) over the telephone. |

| | | |
|---|---|---|
| 8. | Mar 8, 2016 | PAG Asia Capital (Shan) submitted a signed non-binding Letter of Interest to Fazal Merchant and DWA's Board of Directors which references the proposed $35 share price. |
| 9. | Mar 21, 2016 | Preliminary due diligence review of DWA was commenced, following discussions between Kevin Xu of PAG Asia Capital and Fazal Merchant of DWA regarding the due diligence review process. |
| 10. | Mar 22, 2016 | DWA began granting access to the online data room to PAG Asia Capital and its external advisors at O'Melveny and E&Y, respectively. |
| 11. | Mar 26, 2016 | Shan forwarded O'Melveny's legal due diligence request list to DWA. |
| 12. | Mar 28, 2016 | Certain PAG project team members and E&Y team members commenced the on-site due diligence review process. <br><br> As described in Exhibit B-2 below, O'Melveny's team members commenced on-site legal due diligence at DWA's offices in April 2016. |
| 13. | Mar 30, 2016 | "Kick-off" due diligence call with broader working group (including O'Melveny and DWA) was held, as described in Exhibit B-2. |
| 14. | April 2016 | During the month of April, in addition to the on-site due diligence investigation, there were regular telephonic and email communications between the PAG Asia Capital project team members and representatives from DWA regarding the due diligence review process, certain deal terms, and sources of financing. |
| 15. | April 7, 2016 | PAG Asia Capital and BAML commenced preliminary discussions regarding BAML's potential financing of the PAG-DWA transaction. |
| 16. | April 27, 2016[1] | Immediately prior to the Corporate Disclosure, PAG Asia Capital (through O'Melveny) circulated a revised letter of interest to DWA |

---

[1] Note that such April 27 date is based upon the PAG Asia Capital project team members' location in Greater China, which is 12 hours ahead of the US time zone.
OMM_US:75016762.7

Exhibit 6

|  |  | with certain accompanying documents. |

## EXHIBIT B-2

Listed below is a detailed, written chronology setting forth the dates and descriptions of all significant meetings, communications, events and developments related to the potential PAG-DWA transaction prior to the public dissemination of the Corporate Disclosure, solely as they relate to the communications as between O'Melveny (on behalf of PAG Asia Capital) and DWA (and/or its external legal counsel at Cravath, Swaine & Moore and Munger, Tolles and Olson).

| Item | Date | Description |
|---|---|---|
| 1. | March 11, 2016 | Representatives of O'Melveny and PAG Asia Capital have a preliminary telephonic discussion regarding the potential PAG-DWA transaction. |
| 2. | March 11-25, 2016 | A limited O'Melveny team conducted preliminary review and analysis and discussed the potential PAG-DWA transaction with PAG Asia Capital. |
| 3. | March 26, 2016 | Paul Scrivano sent an initial due diligence request list to Shan at PAG Asia Capital. Shan in turn distributed the list to DWA (Heidi Scheeline and Fazal Merchant).<br><br>A broader team of O'Melveny attorneys is informed of the potential transaction and preliminary due diligence review process. |
| 4. | March 30, 2016 | Paul Scrivano, Tony Wang, Jay Herron, Noah Kornblith, Martha Todd, Stephen Scharf and Amy Siegel participated on a "kick-off" conference call with DWA and PAG Asia Capital. |
| 5. | March 31, 2016 | Paul Scrivano emailed a revised term sheet to Fazal Merchant of DWA. |
| 6. | April 2016 | Between April 1 to April 23, O'Melveny conducted preliminary due diligence regarding DWA (both via the data room and pursuant to on-site review) and exchanged various communications with DWA personnel. During such time, O'Melveny and PAG Asia Capital had regular communications via telephone and email. |
| 7. | April 5, 2016 | Eric Schiele of CSM circulated a revised term sheet to Paul Scrivano. |

| | | |
|---|---|---|
| 8. | April 6, 2016 | Paul Scrivano had a telephone conference with Faiza Saeed, Eric Schiele of CSM and Ron Olson of MTO to discuss the term sheet. Thereafter, Ting Cheng of CSM circulated a revised term sheet to O'Melveny. |
| 9. | April 11, 2016 | Katerina Novak of CSM sent an initial draft of the merger agreement to Paul Scrivano. |
| 10. | April 23, 2016 | Paul Scrivano sent comments to the merger agreement to Faiza Saeed at CSM. |
| 11. | April 27, 2016 | O'Melveny (on behalf of PAG Asia Capital) sent a revised letter of interest to DWA with certain accompanying documents. |

**EXHIBIT 7**



**Arthur R. Block**
Executive Vice President
General Counsel and Secretary

FOIA CONFIDENTIAL TREATMENT REQUESTED BY COMCAST CORPORATION

May 23, 2016

Re: In the Matter of Trading in the Securities of DreamWorks Animation SKG, Inc. (LA-4671)

Ms. Jasmine M. Starr
U.S. Securities and Exchange Commission
Division of Enforcement
444 South Flower St., Suite 900
Los Angeles, CA 90071

Dear Ms. Starr:

I write in response to your request made May 20, 2016 for a voluntary response to your question regarding how Comcast Corporation ("Comcast") learned in early April 2016 that DreamWorks Animation SKG, Inc. ("DreamWorks Animation") was engaged in discussions regarding a potential transaction. A description of the relevant events, as known to Comcast, follows:

On April 10, 2016 William H. Aaronson of Davis Polk & Wardwell LLP ("Davis Polk") was advised that George R. Bason, Jr., also of Davis Polk, had received a call from Centerview Partners asking if Davis Polk could serve as counsel to Centerview in connection with Centerview's role as financial advisor to a special committee of the DreamWorks Animation Board of Directors. Aaronson understood that the special committee was created in connection with a potential M&A transaction involving DreamWorks Animation. Given Davis Polk's ongoing role as counsel to Comcast, on April 11, 2016, Aaronson sought to clear with Comcast any conflict which might arise out of Davis Polk's representation of Centerview. To do so, Aaronson called Robert Eatroff, Comcast's Executive Vice President, Global Corporate Development & Strategy, and queried whether Comcast would be comfortable with Davis Polk acting as counsel to a financial advisor to a special committee of a publicly traded film studio. Aaronson recalls that Eatroff immediately concluded that the studio at issue must be DreamWorks Animation and indicated that Davis Polk should not take on such an engagement. Aaronson did not confirm or reject Eatroff's suspicion regarding the identity of the film studio. Davis Polk then advised Centerview that Davis Polk could not take on the assignment.

\* \* \*

Comcast reserves the right to amend or supplement this response in the event that it becomes aware of additional relevant information.

One Comcast Center  Philadelphia, PA 19103  www.comcastcorporation.com
Office: 215 286 7564  Email: ablock@comcast.com

Exhibit 7

By providing this information, Comcast does not waive or otherwise relinquish any potential objections or defenses to subpoenas or other requests or demands from the U.S. Securities and Exchange Commission (the "SEC") or other U.S. regulators and/or law enforcement agencies. In addition, the provision of this information should not be construed as a waiver of any privilege or protection afforded to Comcast—including the attorney-client privilege and work product doctrine. The inadvertent provision of any information that is privileged or otherwise immune from disclosure shall not constitute a waiver of any such privilege or immunity.

For the reasons set forth in the accompanying letter, Comcast requests that the SEC treat the information contained in this letter as confidential under the Freedom of Information Act and all other applicable laws, regulations, and rules. We also request that the SEC notify Comcast of any third-party request for access to these materials and that the SEC provide Comcast with an opportunity to substantiate its claim of confidential treatment before any such disclosure by notifying me.

Please feel free to contact me if you have any questions.


Sincerely,



Arthur R. Block
Executive Vice President and General Counsel

<u>Via Overnight Courier</u>

Exhibit 7