UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                       Plaintiff,<br><br>           -v-<br><br>SHAOHUA (MICHAEL) YIN,<br><br>             Defendant, and<br><br><br>LIZHAO SU, ZHIQING YIN, JUN QIN, YAN ZHOU, BEI XIE, and CHAOFENG JI,<br><br>            Relief Defendants. | 17-CV-972 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

       Several motions are before the Court in this insider trading case.  First, Relief Defendant

Chaofeng Ji moves to dismiss.  (ECF No. 136.)  Second, the SEC moves for judgment against

Defendant Yin[1] on the entirety of its insider trading claims.  (ECF No. 313.)  Third, the

remaining Relief Defendants[2] move for summary judgment as to a portion of the SEC's insider

trading claims against Defendant Yin.  (ECF No. 276.)  Fourth, two of the Relief Defendants —

Lizhao Su and Zhiqing Yin — request emergency relief modifying the preliminary injunction

issued in this case in March 2017.  (ECF No. 350.)  For the reasons that follow, Ji's motion to

dismiss is granted; the SEC's motion for judgment as to Yin is granted in part and denied in part;

---

[1] There are two defendants with the surname Yin.  For the purposes of this Opinion and Order, "Yin" refers to Shaohua (Michael) Yin, the main defendant.

[2] Relief Defendant Ji is not a moving party on the motion for summary judgment.

and the remaining Relief Defendants' motions for summary judgment and a modification of the injunction are denied.

## I.    Background

Because the procedural history of this case is sprawling, the Court recounts only those facts necessary to the disposition of the pending motions.[3]

Defendant Yin is a hedge fund manager living and working in China.  (ECF No. 68 ("SAC").)  The SEC alleges that he traded securities in DreamWorks Animation SKG, Inc. and Lattice Semiconductor Corporation based on insider information, reaping tens of millions of dollars in profits.  (*Id.* ¶ 1.)  According to the SEC, Yin made the trades using five brokerage accounts (the "Interactive Broker" or "IB" accounts) nominally belonging to the Relief Defendants in order to evade regulatory scrutiny.  (*Id.*)  The Relief Defendants are Lizhao Su, Yin's mother; Zhiqing Yin, Yin's father; Jun Qin, Yin's cousin; Yan Zhou, who teaches piano to Yin's children; Chaofeng Ji, Yin's friend; and Bei Xie, Ji's cousin.  (*Id.* ¶¶ 20 – 54.)  The SEC further alleges that Ji, who during the period in question worked as an asset manager at a Chinese financial services company, shared material non-public information with Yin regarding an impending acquisition of DreamWorks just before the trades in question.  (ECF Nos. 147 at 7, 288 at 19 – 20.)  Ji filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(5), arguing lack of subject matter jurisdiction and personal jurisdiction, as well as defective service of process.  (ECF No. 136.)

On March 23, 2017, the Court issued an injunction, on consent, freezing the funds in the five IB accounts, which now total $82 million.  (ECF Nos. 27, 353 at 12.)  The Court has

---

[3] Additional detail is set forth in the Court's prior opinions and orders at ECF Nos. 48, 53, and 223.

modified the injunction on several occasions to release funds relating to litigation expenses and certain Relief Defendants' medical expenses.  (*See* ECF Nos. 134, 267, 275, 291, 349.)

On June 20, 2019, after months of wrangling over the location where Yin and the Relief Defendants would be deposed, the Court ordered Yin to sit for his deposition in Taiwan, rather than the SEC's proposed venue of New York.  (ECF No. 124 at 13:4-9.)  The Court made clear that Yin risked default if he failed to appear for that deposition.  (*Id.*)  Yin nonetheless willfully failed to appear for the deposition.  On November 19, 2020, the Court entered a default judgment against him, finding that such a severe sanction was warranted because "Yin did not merely fail to appear for a deposition; rather, he willfully disobeyed the Court's extensively litigated order for him to appear and its concomitant warning that a default judgment would follow noncompliance." *Sec. & Exch. Comm'n v. Shaohua Yin*, No. 17 Civ. 972, 2020 WL 6801915, at *2 (S.D.N.Y. Nov. 19, 2020).  In the same opinion, the Court granted the SEC's request for the appointment of a special master to address the question of whether Yin engaged in spoliation by deleting responsive documents from his personal computer.  *Id.* at *4.

On February 7, 2022, Relief Defendants moved for summary judgment on the portion of the insider trading claims relating to Dreamworks.  (ECF No. 276.)  On July 29, 2022, the SEC moved for judgment as to both the Dreamworks and Lattice trading.  (ECF No. 313.)  The Court held oral argument on Relief Defendants' motion for summary judgment on August 25, 2022. That was followed by a settlement conference on October 26, 2022, which was unfruitful.

On October 31, 2022, Relief Defendants Su and Yin filed an emergency motion to again modify the preliminary injunction, seeking to release any frozen funds in the IB accounts in excess of $71 million, which they claim is the maximum amount that the SEC may recover on its insider trading claims against Yin.  (ECF No. 350.)

## II.   Legal Standards

### A.   Motion to Dismiss

Rule 12(b)(1) requires that a claim be dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).  "In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001).

Likewise, on a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  In cases where there has been no "full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (internal citation and quotation omitted).

Under Rule 12(b)(5), a court may dismiss a claim due to insufficient service of process. On such a motion, "the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010).  The adequacy of service of process is resolved by reference to Federal Rule of Civil Procedure 4(m), which "governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).  Because a Rule 12(b)(5) motion implicates "whether [the court] has

jurisdiction," the court "looks to matters outside the complaint." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016).

### B.      Motion for Judgment

Federal Rule of Civil Procedure 54(b) permits a court to enter partial final judgment "when three requirements have been satisfied: (1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an express determination there is no just reason for delay of entry of final judgment as to fewer than all of the claims or parties involved in the action." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 322 – 23 (2d Cir. 2018) (cleaned up).  The determination that there is no just reason to delay entry of a final judgment "is a matter committed to the sound discretion of the district court." *Roberts v. Bennaceur*, 658 F. App'x 611, 619 (2d Cir. 2016) (quoting *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 86 (2d Cir. 1998)).

### C.      Motion for Summary Judgment

Under Rule 56, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering the record as a whole, a rational jury could find for the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

### D.      Motion to Modify Preliminary Injunction – Asset Freeze

"It is 'well established' that Section 22(a) of the Securities Act of 1933 and Section 27 of the Securities Exchange Act of 1934 'confer general equity powers upon the district courts' that are 'invoked by a showing of a securities law violation.'" *Smith v. S.E.C.*, 653 F.3d 121, 127 (2d Cir. 2011) (quoting *SEC v. Manor Nursing Ctrs.*, Inc., 458 F.2d 1082, 1103 (2d Cir. 1972)).  As

part of its equitable power, the court may order an asset freeze "to ensure that any funds that may become due can be collected." *Id.* (citation omitted). The decision to freeze assets, or to modify an asset freeze, is committed to the discretion of the district court. *Id.* "The SEC must establish only that it is likely to succeed on the merits, a lesser showing than is necessary for other forms of relief." *Yin*, 2020 WL 6801915, at *7 (quoting *SEC v. I-Cubed Domains, LLC*, 664 Fed. App'x 53, 55 (2016) (unpublished opinion)). As noted in the Court's prior opinion, because the original preliminary injunction was entered on consent of all parties rather than based on the Court's independent determination, and because Relief Defendants reserved the right to challenge the extent of the stipulated freeze, the SEC must still establish its likelihood of success on the merits as if the freeze were being imposed in the first instance. *Yin*, 2020 WL 6801915, at *7 n.9.

## III.    Discussion

### A.    Relief Defendant Ji's Motion to Dismiss

Ji invokes three bases for his motion to dismiss: lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to effect proper service of process. If Ji demonstrates that the Court lacks subject matter jurisdiction, the Court need not address the issues of personal jurisdiction or service. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Accordingly, the court addresses subject matter jurisdiction first.

A court has the equitable power to order disgorgement against someone who is not alleged to be a securities law violator if he "has received ill-gotten funds" and "does not have a legitimate claim to those funds." *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998). That person, referred to as a relief defendant or a nominal defendant, "holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute." *S.E.C. v.*

*Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) (citation omitted).  The relief defendant's role in a proceeding like this one is circumscribed: "Because the nominal defendant is a trustee, agent, or depositary who has possession of the funds which are the subject of litigation, he must often be joined purely as a means of facilitating collection." *Id.*

Ji has successfully challenged the factual basis of the SEC's assertion of jurisdiction over him as a relief defendant.  The dispositive issue is whether Ji possesses or at any time possessed any funds that the SEC alleges to be ill-gotten as a result of Yin's insider trading.  If Ji does not possess and has not possessed such funds, then he has no proper role in this litigation, given that the SEC has not formally accused him of any wrongdoing in his own right.[4]  The SEC's basis for naming Ji as a relief defendant is the theory that he had funded and exercised joint control over the IB account belonging to his cousin, Bei Xie, and that Yin used the Xie account to conduct insider trading in Dreamworks and Lattice.  (SAC ¶¶ 48 – 54; ECF No. 147 at 2 – 5.)  But Ji has disclaimed any ownership interest over the funds in Xie's account.  (ECF No. 138.)  He has also attested that he has not received funds from the account, nor does he expect to.  (*Id.*)  For her part, Xie denied in her deposition testimony that the money in the account belonged to Ji or that he was the true beneficiary of the account.  (ECF No. 166-2.)  While the SEC argues that Ji was the source of the money used to fund the account, Xie has sufficiently rebutted that claim by showing that the transfer of funds in question was not related to the opening of Xie's IB account.  (ECF Nos. 165 at 3 n.4; 166-3.)

The SEC's collection claim against Ji as a relief defendant is therefore moot.  *See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 94 (2d Cir. 2007)

---

[4] The SEC maintains that Ji is the likely tipper in the alleged Dreamworks insider trading scheme, *e.g.* ECF No. 288 at 19 – 23, but no civil action or criminal charges have been brought against him in connection with this matter.

("Mootness, in the constitutional sense, occurs when the parties have no legally cognizable interest or practical personal stake in the dispute, and the court is therefore incapable of granting a judgment that will affect the legal rights as between the parties.") (cleaned up).  The SEC protests that it is premature to declare its collection claim against Ji moot because (1) it has not yet obtained monetary relief in this case and (2) the Court has not decided the merits issue of whether Ji received any ill-gotten funds from the alleged insider trading scheme.  Neither argument is convincing: First, because Ji has convincingly disclaimed ownership of the funds in the Xie account, there is no claim for monetary relief to potentially pursue against him.  Second, it is unnecessary to delay decision on this issue; the record evidence available now is sufficient to show that the SEC has failed to meet its burden to show, by a preponderance of the evidence, that subject matter jurisdiction exists — i.e., that its collection claim against Ji is not moot.

The SEC makes two final counterarguments: First, it contends that Ji's disclaimer of an ownership interest in the Xie account is merely a voluntary cessation of unlawful activity, which cannot justify a finding of mootness.  The voluntary cessation doctrine, however, is ill-fitting under these circumstances.  True enough, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 224 (2d Cir. 2018) (quoting *Mhany Mgmt., Inc. v. Cty. Of Naussau*, 819 F. 3d 581, 603 (2d Cir. 2016)).  But this is not a situation "in which a defendant deprives a plaintiff of her stake in the litigation" by stopping the unlawful activity and leaving the plaintiff with no chance for redress. *See id.*  The Xie account has been frozen since 2017.  There is no reason to believe that Ji will suddenly reassert an interest in the funds, especially because he has not done so in the six years since the asset freeze took effect.  In the same vein, Ji has not joined the other relief defendants in moving

to modify the preliminary injunction at any point.  (*See* ECF Nos. 150, 291, 351.)  In sum, there is no reason to presume that Ji will receive ill-gotten gains from the account at some point in the future, and therefore the voluntary cessation doctrine is inapplicable.

Second, the SEC contends that even if the question of whether Ji received ill-gotten gains is moot, it still retains a concrete interest in determining the provenance of the money in the Xie account in order to prove its insider trading claim.  But the purpose of a relief defendant is not to use him as a hook for obtaining discovery on the underlying criminal conduct; his sole purpose is to ensure that the plaintiff can achieve complete monetary relief.  Because the SEC can do so without Ji's continued presence in this case, the SEC's claim for monetary relief against him is moot.  Ji's motion to dismiss is therefore granted.

For the purposes of the remainder of this Opinion and Order, the term "Relief Defendants" refers to Su, Zhiqing Yin, Qin, Zhou, and Xie.

### B.      The SEC's Motion for Final Judgment as to Defendant Yin

Following the Court's conclusion that the SEC is entitled to default judgment against Yin based on his willful disregard of the Court's deposition order, the Court now enters final judgment as against Defendant Yin on both of the SEC's insider trading claims.  To reiterate, this Court may enter partial final judgment under Rule 54(b) when "(1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an express determination there is no just reason for delay of entry of final judgment as to fewer than all of the claims or parties involved in the action." *Linde*, 882 F.3d at 322 – 23.

The requirements of Rule 54(b) are satisfied because (1) this case involves multiple parties — Yin and the five Relief Defendants; (2) the Court now makes a final determination that Yin is liable for both the Dreamworks and Lattice insider trading claims brought by the SEC;[5] and (3) there is no just reason to delay entry of final judgment as to Yin even if Relief Defendants continue to litigate this case.  The Court granted default judgment as to Defendant Yin more than two years ago.  This case has just surpassed the six-year mark on this Court's docket.  Because Yin's liability is not in doubt, entering final judgment at this time is in the interest of efficiency and bringing this dispute to a speedier resolution.

Relief Defendants vehemently oppose the entry of final judgment as to Yin, arguing that the SEC's motion must be denied as premature.  According to them, "an unbroken line of decisions" in the Second Circuit tracing back to the Supreme Court's decision in *Frow v. De La Vega*, 82 U.S. 552, 554 (1872), requires the Court to postpone entry of a final decision on Yin's liability until Relief Defendants have concluded their case.  (ECF No. 328 at 10.)  On this view, Relief Defendants may challenge the merits of the SEC's insider trading claims against Yin and, if they prevail, the default judgment against Yin must be rescinded.

Relief Defendants' argument fails.  A careful analysis of Second Circuit case law considering the "*Frow* principle" indicates that (1) the continued application of *Frow* is doubtful following the enactment of Rule 54(b) and (2) while district courts within the Circuit have continued to apply *Frow* in an inconsistent manner, there *is* a consistent throughline in the cases:

---

[5] This follows the Court's prior conclusion that, following default judgment, "there is no question that the SEC will prevail on its insider trading claim" and "the Court's grant of a default judgment against Yin renders irrelevant any evidentiary deficiency with respect to Yin's liability."  *Yin*, 2020 WL 6801915, at *7.

*Frow* does not prevent entry of judgment where the defendants are not similarly situated and there is no risk of inconsistent judgments.  That is the case here.

>1.	**The Continued Viability of *Frow***

In *Frow*, eight defendants were charged with a joint conspiracy to defraud the complainant; all defendants except for Frow himself answered the complaint in a timely manner. 82 U.S. at 553.  The court entered final judgment against Frow based on his default, denying him the opportunity to contest the case on its merits.  *Id.*  Later, each of his co-defendants prevailed on the merits.  *Id.*  In a decision reversing the judgment of the court below, the Supreme Court articulated for the first time the principle that, in certain cases, where some defendants have defaulted and some have not, "the true mode of proceeding" is to wait to enter final judgment until the case has concluded as to all defendants in the action.  82 U.S. at 554.  The purpose of the principle was to prevent the "absurdity" that would follow if a court imposed liability as to some defendants, but not others, on the very same claims.  *Id.*  Where *Frow* applies, "a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause," is "incongruous and illegal."  *Id.*

Frow's applicability, however, has been called into serious question by the Second Circuit.  In *International Controls Corporation v. Vesco*, 535 F.2d 742 (2d Cir. 1976), the court addressed the question whether — notwithstanding Rule 54(b) — *Frow* still forbade the entry of a final judgment against one defendant while the others continued to contest liability.  *Id.* at 746 n.4.  The Court cautioned that "it is most unlikely that *Frow* retains any force subsequent to the adoption of Rule 54(b)."  *Id.*  Because Rule 54(b) squarely applies to the present case, the Court must defer to the Second Circuit's warning that *Frow* retains little, if any, authority.

### 2.    Application of *Frow*

Yet the *Frow* principle still warrants further scrutiny; Relief Defendants correctly point out that despite its clear negative treatment in *Vesco*, district courts within the Second Circuit have continued to apply and refine the *Frow* principle in some situations.  Judge Nathan aptly described the current state of affairs: "The question of when a district court may grant a default judgment — rather than merely a certificate of default — against one defendant in a multi-defendant case when other defendants continue to actively litigate has received extensive, and not always consistent, treatment in the Second Circuit, specifically, and federal courts, generally."  *Knowles-Carter v. Feyonce, Inc.*, No. 16-CV-2532 (AJN), 2017 WL 11567528, at *3 (S.D.N.Y. Sept. 23, 2017) (providing an extensive overview of how courts within and outside of the Second Circuit have applied *Frow* in recent years).  Still, a closer look at where the *Frow* principle has survived nonetheless supports the conclusion that it does not apply under the facts of this case.

Some courts have continued to look to the *Frow* principle in situations of true joint liability, refusing to apply *Frow* in situations of joint and several liability.  *See Rivera v. Mattingly*, No. 06 Civ. 7077, 2017 WL 7050323, at *7 (S.D.N.Y. June 23, 2017) (collecting cases and acknowledging that "if the liability sought to be imposed is joint and several rather than joint, most courts have held that the rationale of *Frow* does not directly apply, since it would not be inconsistent to hold some but not all defendants liable."); *Economist's Advocate, LLC v. Cognitive Arts Corp.*, No. 01 Civ. 9486, 2004 WL 2650906, at *4 (S.D.N.Y. Nov. 22, 2004) ("To the extent the rule announced by *Frow* affects entry of default judgment as to one defendant prior to a determination on the merits as to the remaining defendants, it has been limited by many courts to those instances where the liability of the defendants is joint."); *see also Lite-Up Corp. v. Sony Music Ent., Inc.*, No. 97 Civ.1546, 1999 WL 436563, at *2 (S.D.N.Y. June

24, 1999) (same).  The reasoning behind these rulings, as expressed in a much-cited Seventh

Circuit case, is that "the result in *Frow* was clearly mandated by the Court's desire to avoid

logically inconsistent adjudications as to liability," and therefore, "when different results as to

different parties are not logically inconsistent or contradictory, the rationale for the *Frow* rule is

lacking."  *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 – 58 (7th Cir. 1980).

On the other hand, some courts have applied the *Frow* principle to cases involving joint

and several liability where the defendants are "similarly situated" or have "closely related

defenses."  *See, e.g., Hudson v. Universal Pictures Corp.*, No. 03-CV-1008, 2004 WL 1205762,

at *5 (E.D.N.Y. Apr. 29, 2004), *aff'd sub nom. Hudson v. Imagine Ent. Corp.*, 128 F. App'x 178

(2d Cir. 2005) ("To allow [the plaintiff] to recover a default judgment against one defendant

when claims against similarly situated co-defendants have been found to be meritless would be

'unseemly and absurd, as well as unauthorized by law.'") (quoting *Diarama Trading Co., Inc. v.

J. Walter Thompson USA, Inc.*, No. 01 Civ. 2950, 2002 WL 31545845, at *3 (S.D.N.Y. 2002));

*Diarama Trading Co. Inc.*, 2002 WL 31545845, at *4 ("[D]ecisions in this Circuit subsequent

to *Vesco* support extension of *Frow* to cases in which defendants are merely 'similarly

situated.'"); *Rivera*, 2017 WL 7050323, at *7 ("[T]he rule developed in *Frow* 'probably can be

extended to situations in which joint liability is not at issue but several defendants have closely

related defenses.'" (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal

Practice & Procedure § 2690 at 98 (2016))); *El Omari v. Buchanan*, No. 20 Civ. 2601, 2021 WL

465431, at *3 (S.D.N.Y. Feb. 9, 2021) ("The key inquiry is whether the default judgment could

result in inconsistent outcomes for similarly situated defendants.").

At least one court has also distilled what is perhaps a third principle, about which it

claimed courts were "near-uniform"— that "default judgment cannot be issued where the relief

requested would prejudice actively litigating defendants." *Knowles-Carter*, 2017 WL 11567528 at *5 (collecting cases).

In light of *Vesco* and the morass of contradictory district court rulings, "[t]he contours of the precise rule in the Second Circuit are not entirely clear." *Knowles-Carter*, 2017 WL 11567528; *see also Chain v. N. E. Freightways, Inc.*, No. 16 Civ. 3371, 2020 WL 7481142, at *16 (S.D.N.Y. Dec. 18, 2020), *report and recommendation adopted*, No. 16 Civ. 3371, 2021 WL 5051656 (S.D.N.Y. Nov. 1, 2021) ("The courts in this Circuit have applied *Frow* inconsistently."). Adding to the ambiguity is the fact that the Second Circuit "has not addressed the standard it articulated in *Vesco* since that case was decided." *El Omari*, 2021 WL 465431, at *2 (citation omitted).

But despite the uncertainty over the full extent of the *Frow* principle, existing case law nonetheless supports the conclusion that *Frow* does not prevent the entry of judgment against Yin alone.

Returning to *Vesco*, the Second Circuit clarified that even if *Frow* does retain any authority, it controls "at most" in situations "where the liability of one defendant *necessarily* depends upon the liability of the others." 535 F.2d 742 at 746 n.4 (citation omitted) (emphasis added). And despite the different applications of *Frow* since *Vesco*, what courts within the Second Circuit have in common in their approaches is the principle that "the key to applying *Frow* 'is recogniz[ing] that the *Frow* principle is designed to apply only when it is necessary that the relief against the defendants be consistent.'" *Chain*, 2020 WL 7481142, at *17 (quoting *Rivera v. Limassol Grocery, Corp.*, No. 16 Civ. 6301, 2019 WL 1320339, at *4 (E.D.N.Y. Jan. 4, 2019)); *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 414 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) ("The key 'is to recognize that the *Frow* principle is designed to apply

only when it is necessary that the relief against the defendants be consistent.  If that is not the case, then a default against one defendant may stand, even though the remaining defendants are found not liable.'" (quoting Wright, Miller, & Kane at 77 (3d ed.1998))).  Whether one takes the narrower view of *Frow* that limits it to cases of true joint liability, a broader view which extends it to cases where the defendants are "similarly situated," or simply concludes that *Frow* applies where there is a danger of inconsistent judgments, the status of the relief defendants as relief defendants — that is, as defendants who are not real parties in interest — underscores that *Frow* does not control.  The basis for that conclusion is explored below.

### a.      The Nature of Relief Defendants

As a threshold matter, it is essential to understand the nature of the Relief Defendants in this matter.  A relief defendant is someone "who is not accused of wrongdoing in a securities enforcement action" but against whom "[f]ederal courts may order equitable relief" if the person "(1) has received ill-gotten funds; and (2) does not have a legitimate claim to those funds."  *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998).  A popular description of this "rather obscure common law concept of the 'nominal defendant'" was given by the Seventh Circuit in *S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991):

> A "nominal defendant" is a person who can be joined to aid the recovery of relief without an assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation.  A nominal defendant holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute.  Because the nominal defendant is a trustee, agent, or depositary who has possession of the funds which are the subject of litigation, he must often be joined purely as a means of facilitating collection.  The court needs to order the nominal defendant to turn over funds to the prevailing party when the dispute between the parties is resolved.  A nominal defendant is not a real party in interest, however, because he has no interest in the subject matter litigated.  His relation to the suit is merely incidental and it is of no moment to him whether the one or the other side in the controversy succeeds.  Because of the non-interested status of the nominal defendant, there is no claim against him and it is

unnecessary to obtain subject matter jurisdiction over him once jurisdiction over
the defendant is established.

(Cleaned up and internal quotations omitted).  *See also S.E.C. v. Aragon Cap. Advisors, LLC*,

No. 07 Civ 919, 2011 WL 3278907, at *21 (S.D.N.Y. July 26, 2011) (quoting *Cherif*, 933 F.2d at

414) ("Because the nominal or relief defendant possesses the funds that are the subject of the

litigation, 'he must often be joined purely as a means of facilitating collection.'  Indeed, the

nominal defendant has been described as being 'merely incidental' to the suit, and having 'no

interest in the subject matter litigated' because he 'is not a real party in interest.'"); *Commodity*

*Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 225 (2d Cir.) ("A relief defendant is a person

who 'holds the subject matter of the litigation in a subordinate or possessory capacity as to which

there is no dispute.'") (cleaned up and internal quotations omitted).  Importantly, the SEC does

not have a "cause of action" against a relief defendant; rather, it names a party as a relief

defendant solely to "effect full relief in the marshalling of assets that are the fruit of the

underlying fraud."  *S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998).

### b.   Relief Defendants and Joint Liability

With a proper understanding of the role of Relief Defendants in this litigation, it is clear

that *Frow* does not control.  First, Relief Defendants are not jointly liable with Yin.  Joint

liability "arises when a tortious act is committed by several persons acting in concert.  It means

that each tortfeasor is entirely responsible for the damage resulting from that concerted conduct."

*In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980).  Relief Defendants are not

accused of any responsibility for Yin's insider trading; they are parties in this matter only to

further the SEC's ability to eventually collect monetary sanctions against Yin.  (*See, e.g.*, ECF

No. 314 at 22 ("The only claim against relief defendants is for their receipt of the proceeds of

Defendant's insider trading").)  For the same reason, the concept of joint and several liability does not apply.  Thus, while Relief Defendants argue that this is a situation where "the liability of one defendant necessarily depends upon the liability of others," *Vesco*, 535 F.2d 742 at 746 n.4, that is simply not the case.  Relief Defendants have no personal liability on the insider trading claims.  The issue of disgorgement is distinct from liability on the merits and Relief Defendants err in conflating the two.

### c.        Whether Relief Defendants Are Similarly Situated

Second, Relief Defendants are not similarly situated to Yin.  Relief Defendants claim that the opposite is true — because "the claims against all Defendants flow" from the SEC's insider trading claims against Yin, all Defendants are similarly situated.  (ECF No. 328 at 14-15.) According to Relief Defendants, if the SEC prevails on its insider trading claims against Yin, it prevails on its claims against all Defendants.  If the SEC fails to prove its insider trading claims, then it does not prevail against Relief Defendants or Yin.  But this argument misstates the nature of the case with regard to Relief Defendants.  As noted above, there are no true "claims" against Relief Defendants.  They have been added to the action only as a means of securing relief in the event of a judgment.  They are not real parties in interest against whom a cause of action is asserted.  They are thus, by definition, not similarly situated to Yin.

This view is supported by the case law.  Defendants point to no case where a nominal or relief defendant was able to continue to defend a case to the benefit of a defaulting, allegedly culpable defendant — nor has the Court succeeded in locating one.  Instead, in cases applying the *Frow* principle, the plaintiff has asserted substantially similar — if not identical — claims directly against both the defaulting defendants and the non-defaulters.  For example, Defendants rely heavily on *El Omari*, 2021 WL 465431, in which Judge Marrero found that the defaulting

and non-defaulting defendants were sufficiently similarly situated to raise the risk of an inconsistent outcome.  (ECF No. 328 at 11-12.)  But in that case, the plaintiff levied his defamation claims directly against *all* of the defendants; Judge Marrero concluded that it would be inappropriate to hold the defendant who defaulted based on a failure to answer liable for defamation via default judgment if the non-defaulting defendants might be ultimately absolved of liability on the merits.

Likewise, other cases within this Circuit involve claims alleging that both defaulters and non-defaulters committed an identical harm, or else involve multiple parties claiming an interest in a single *res*. *See, e.g.*, *City of Almaty, Kazakhstan v. Sater*, No. 19 Civ. 2645, 2021 WL 4340541, at *2 (S.D.N.Y. Sept. 23, 2021) ("The complaint makes no attempt to delineate the culpability of any of the specific Defendants from that of the others, and, indeed, alleges that [the defaulter's] actions cannot easily be separated from the actions of the other Defendants that continue to litigate.") (internal quotation omitted)); *Rivera v. Limassol Grocery, Corp.*, No. 16 Civ. 6301, 2019 WL 1320339, at *1 (E.D.N.Y. Jan. 4, 2019) (observing that "the facts and legal claims are substantially the same — if not identical" — between the defaulting corporation and the non-defaulting owner); *Rivera v. Mattingly*, 2017 WL 7050323, at *8 ("[The defaulting defendants] are similarly situated as [to the non-defaulters] . . . because all of these defendants were FSSU employees . . . and plaintiffs' claims against [the defaulters] are identical to their claims against [the non-defaulters]; *Knowles-Carter*, 2017 WL 11567528, at *6 ("[T]he Complaint in this case alleges joint ownership by the Defendants of the website <feyonceshop.com> and makes no attempt to delineate the culpability of any of the specific Defendants from that of the others."); *Lite-Up Corp.*, 1999 WL 436563, at *1 ("The complaint does not distinguish between the defendants, but rather alleges that they both acted in derogation

of plaintiff's rights in the trademark and were jointly responsible" for trademark infringement and unfair competition).

The same is true of cases outside of this Circuit. *See, e.g.*, *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 – 33 (9th Cir. 2001) ("[E]ach transaction between [the plaintiff and the defaulting and non-defaulting defendants] followed an identical pattern with almost identical legal documents. The [plaintiff] filed a single complaint against all 132 [defendants].  More importantly, the central legal issue concerning each transaction was the same."); *Sunbelt Rentals, Inc. v. Three Bros. Elec. Contractors, Inc.*, No. 21 Civ. 01357, 2022 WL 134921, at *4 (E.D. Cal. Jan. 14, 2022) ("[T]he claims, facts, and legal issues asserted in the complaint relative to each of the two defendants are quite similar."); *FlexSteel Pipeline Techs., Inc. v. Chen*, No.16 Civ. 239, 2020 WL 13189302 (N.D. Fla. July 21, 2020) (noting the "substantial overlap in the claims" against the defaulter and non-defaulting party).  While *Frow* may apply where defaulting and non-defaulting defendants are similarly situated, this is not such a case.

### d.   Inconsistent Judgments

The fear of inconsistent judgments is a constant throughline in *Frow* and its progeny. And for good reason: in a typical case where *Frow* applies, holding one defendant liable due to default raises the specter of inconsistency because a plaintiff may fail to prove that the non-defaulters are liable on the merits.  That concern is not applicable here: because Relief Defendants are not alleged to be "liable" on any claim, there is no risk of inconsistency as to liability.  Once judgment as to Yin's liability is entered, the only question remaining as to Relief Defendants is their ownership of the contested assets or their legitimate claims to them.

Illustrative of this point is *Micro Fines Recycling Owego LLC v. Ferrex Engineering Limited*.  No. 17 Civ. 1315, 2020 WL 880801 (N.D.N.Y. Feb. 24, 2020).  There, Ferrex, the

defendant alleged to be directly liable for fraud, had defaulted; two other defendants ("1199541" and "Clarkson") remained in the case, but they were alleged to be mere "alter egos" of Ferrex. For that reason, the court refused to apply *Frow* to stay default judgment against Ferrex:

> Both *Chiquita* and *Mercury* . . . addressed situations in which the plaintiff had direct claims against the non-defaulting defendants. . . . Those plaintiffs could obtain independent judgments based on the causes of action they directly brought against the non-defaulting defendants, creating the potential for inconsistent judgments. But here, Plaintiff does not directly bring any causes of action against 1199541 or Clarkson. *See* Am. Compl. ¶¶ 39 – 66 (including Clarkson and 1199541 only in Count IV's assertion of alter ego liability, not Counts I – III). Plaintiff cannot therefore obtain independent judgments against 1199541 or Clarkson — 1199541 and Clarkson can only be held liable to the extent that Ferrex is liable. See *Chiquita*, 2018 WL 1786991, at *9 ("[A]lter ego liability is not a separate cause of action, 'rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners[,]' or on another entity.") (quoting *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 195 (E.D.N.Y. 2009)). The question of whether Ferrex's liability can be attributed to Clarkson and 1199541 remains to be litigated, but the answer will not change the amount of damages for which Ferrex — and potentially 1199541 and Clarkson — is liable.

*Micro Fines*, 2020 WL 880801 at *4. Because their liability depended entirely on the liability of Ferrex, once Ferrex defaulted, "the only 'merits' remaining for the [non-defaulting alter-ego] Defendants to defend [were] whether they [could] be reached under a veil-piercing theory to satisfy a judgment against Ferrex." *Id.* A similar situation obtains here. The SEC has not brought any direct causes of action against Relief Defendants; instead, their financial liability depends entirely on Yin's liability. After Yin's default, the only questions remaining for the Relief Defendants to contest are whether the money they hold is in fact theirs, whether it in fact derives from Yin's insider trading activity, and whether they have a legitimate claim to it. *Cavanagh*, 155 F.3d at 136.

The strongest argument for ruling in favor of Relief Defendants would be the broad articulation of the principle propounded by Judge Nathan in *Knowles-Carter*, and adopted by

several other courts in the Southern District, that "default judgment cannot be issued where the relief requested would prejudice actively litigating defendants."  2017 WL 11567528 at *5.  That principle, however, is ill-fitting under these circumstances: the Relief Defendants are not litigating the question of their own liability and, as explained above, there is no possibility of inconsistency on the merits of this case.

### 3.      Judgment as to Defendant Yin

The Court therefore grants the SEC's motion for judgment as to Defendant Shaohua (Michael) Yin on its Dreamworks and Lattice insider trading claims.

The Court grants the SEC's motion for permanent injunctive relief.  Under Section 21(d)(1) of the Exchange Act, a court may grant permanent injunctive relief upon a showing that (1) a person has engaged in acts constituting a violation of the securities laws and (2) there is a likelihood that, unless enjoined, the violations will continue.  *S.E.C. v. Suman*, 684 F. Supp. 2d 378, 391 (S.D.N.Y. 2010), *aff'd*, 421 F. App'x 86 (2d Cir. 2011).  In evaluating the likelihood of future violations, the Court may consider factors including "the degree of scienter involved; the sincerity of the defendant's assurances against future violations; the recurrent or isolated nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; and the likelihood, given defendant's occupation, that future violations may occur."  *SEC v. Ahmed*, 343 F. Supp. 3d 16, 25 (D. Conn. 2018).

The Court has determined that Yin violated the securities laws via the entry of default judgment against him.  Based on the facts and circumstances of this case, there is a high likelihood that Yin would continue to violate the securities laws if not enjoined: Yin has never admitted to any wrongful conduct, nor has he accepted any responsibility whatsoever for his fraud.  (See *id.*)  He blatantly ignored a court order to appear for deposition in Taiwan, even after

the venue had been extensively litigated.[6]  Yin's insider trading was not an isolated incident: On Dreamworks, he conducted insider trading in five separate brokerage accounts, with trades occurring over the span of three weeks and accumulating nearly 2.15 million shares of the company.  (SAC ¶ 109.)  On Lattice, he conducted insider trading in the same five accounts, with trades spanning over months and accumulating over 7 million shares of the company.  (*Id.* ¶¶ 157, 194, 209, 211.)  *See, e.g, S.E.C. v. Contorinis*, 743 F.3d 296, 308 n.6 (2d Cir. 2014) (affirming imposition of permanent injunction where defendant was "an investment professional who engaged in a sophisticated scheme of insider trading with multiple episodes" rather than a "relatively naïve offender[] whose illegal behavior [did] not suggest calculating and carefully premeditated fraud.").  Finally, Yin's actions indicate a high degree of scienter.  Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n. 12 (1976).  Yin's behavior — including his decision to trade under the names of Relief Defendants in order to avoid regulatory scrutiny — underscores his intent to conceal his illicit trades.  For these reasons, the SEC's motion for permanent injunctive relief is granted: Defendant Yin is permanently enjoined from violating Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder.

The SEC requests three further forms of relief: (1) civil penalties of "at least $108,470,178"; (2) an order finding the frozen IB accounts belong to Yin and can be used to satisfy the judgment against him; and (3) an order dismissing the Relief Defendants.  (ECF No. 313 at 2.)  These requests are premature.

---

[6] Yin repeatedly protests that he did not appear for deposition because he risked arrest by the U.S. authorities upon landing in Taiwan.  (*E.g.* ECF No. 344 ("Petrillo Report").)  The Court has already made clear that Yin's "fear of arrest on any pending criminal charges against him [did] not give him carte blanche to disobey this Court's unambiguous order."  *Yin*, 2020 WL 6801915, at *2.

First, the SEC's request for $108,470,178 in damages encompasses a treble penalty pursuant to the Insider Trading and Securities Fraud Enforcement Act of 1988.  But a defendant's default "does not constitute an admission as to the damages claimed in the complaint."  *Sec. & Exch. Comm'n v. Li*, No. 19- Civ. 10562, 2022 WL 2304174, at *3 (S.D.N.Y. June 27, 2022) (citation omitted).  Instead, the "burden is on plaintiff to establish, by a reasonable certainty, his entitlement to the relief requested."  *Id.* (citing *A & B Alternative Mktg. Inc. v. Int'l Quality Fruit Inc.*, 521 F. Supp. 3d 170, 176 (E.D.N.Y. 2021) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999))).  "To determine damages, the court may conduct an inquest . . . or it may rely on the affidavits and other documentary evidence provided by plaintiff, obviating the need for a hearing on damages."  *Id.* (citing *A & B Alternative Mktg. Inc.*, 521 F. Supp. 3d 170 (citing *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr.*, LLC, 779 F.3d 182, 189 (2d Cir. 2015))).

Here, an inquest is appropriate.  In determining the amount of a civil penalty, courts in the Southern District usually consider: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition."  *S.E.C. v. Gupta*, No. 11 Civ. 7566, 2013 WL 3784138, at *1 (S.D.N.Y. July 17, 2013), *aff'd sub nom. U.S. S.E.C. v. Gupta*, 569 F. App'x 45 (2d Cir. 2014).  While the Court has assessed the first, second, and fourth factors elsewhere in this case, it will hear argument from the parties on the third and fifth factors before determining the amount of the civil penalty.

Nor is the Court prepared to conclude that the frozen IB accounts belong entirely to Yin. The record as to the ownership of the accounts is still murky, especially regarding the accounts owned by Yin's mother and father.   Zhiqing Yin, Yin's father, has stated on the record that his son conducted all the trading in his IB account on his behalf and that he had little, if any, knowledge of the specifics of each transaction made in the account.  (ECF No. 196-10 at 94:2-18.)  Yin had the username and password to his father's account.  (*Id.*)  He had complete authority to make any trade using the account.  (*E.g., id.* at 101:2-7.)  The same situation is true as to Yin's mother, Lizhao Su.  But while Yin's *control* over those accounts is not in question, what is still unclear is how much of the money in each account originated with Zhiqing Yin and Su, for reasons that are largely the same as those explained in the Court's prior opinion in this case.  *Yin*, 2020 WL 6801915, at *8 (noting that the tracing analysis of expert Nicole Sliger "says little . . . about the actual ownership and source of the funds."). The Court may use its equitable powers to disgorge money from a person not accused of wrongdoing only where they: (1) have received ill-gotten funds and (2) do not have any legitimate claim to the funds.  *Cavanagh*, 155 F.3d at 136.  It may the case that the Relief Defendants do have a legitimate claim to some portion of the frozen accounts and that they are able to clearly disentangle them from Yin's illicit profits.  *See Yin*, 2020 WL 6801915, at *8 (citing *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1949 (2020)).

To this end, the parties shall confer and submit joint or separate proposals to the Court for oral argument or an evidentiary hearing on (1) the amount of damages to be imposed against Yin and (2) the proportion of ownership between Yin and the Relief Defendants in each of the five accounts.  Because the issue of disgorgement remains outstanding, the SEC's motion to dismiss the Relief Defendants from this case is denied.

### C.    Relief Defendants' Motion for Summary Judgment

Relief Defendants Lizhao Su, Zhiqing Yin, Jun Qin, Bei Xie, and Yan Zhou[7] move for summary judgment as to the Dreamworks insider trading claims. Their argument rests on their contention that the SEC has failed to prove the elements of insider trading as to the Dreamworks transactions, whether under the classical theory or the misappropriation theory.[8]  With reference to the classical theory, they argue that the SEC has failed to provide evidence that a corporate insider at any of the companies involved in the alleged tipping chain intentionally made a tip of material, nonpublic information about the impeding acquisition announcement that eventually made its way to Yin.  (ECF No. 277 at 18 – 19.)  With reference to the misappropriation theory, they argue that the SEC has failed to provide evidence that any person breached a fiduciary duty in providing material, nonpublic information that eventually made its way to Yin.  (*Id.* at 24.)  In short, Relief Defendants argue that, on the merits, they are entitled to judgment as a matter of law because there is no genuine dispute of material fact as to whether the SEC can sustain its insider trading claims as to Dreamworks.

The motion must be denied because Relief Defendants are not entitled to contest the merits of the insider trading claims against Yin.  This is true for two reasons: First, Yin's default has preclusive effect.  Second, Relief Defendants are not real parties in interest, meaning that they are in no position to contest the merits of the summary judgment claims.

---

[7] Relief Defendant Yan Zhou joined the motion for summary judgment filed by the other Relief Defendants and incorporated all of their arguments by reference.  (ECF No. 281.)

[8] Under the classical theory of insider trading, "a corporate insider is prohibited from trading shares of that corporation based on material non-public information in violation of the duty of trust and confidence insiders owe to shareholders."  *S.E.C. v. Obus*, 693 F.3d 276, 284 (2d Cir. 2012).  By contrast, the misappropriation theory "targets persons who are not corporate insiders but to whom material non-public information has been entrusted in confidence and who breach a fiduciary duty to the source of the information to gain personal profit in the securities market."  *Id.*

### 1.      Preclusive Effect of Yin's Default

The Court originally granted the SEC's motion for default judgment against Yin on November 19, 2020.  In that opinion, the Court made clear that its "grant of a default judgment against Yin renders irrelevant any evidentiary deficiency with respect to Yin's liability." *Yin*, 2020 WL 6801915, at *7.  Relief Defendants, through their motion for summary judgment, seek to circumvent the Court's conclusive finding on Yin's liability.  Their attempt to do so fails.

First, Yin's default is the law of the case, applying to the merits of the insider trading claims and to the issue of equitable disgorgement.  The law of the case doctrine provides that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)).  The purpose of the doctrine is to "maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."  18 Wright, Miller & Cooper, Federal Practice and Procedure § 4478 at 788.  That being said, the law of the case doctrine "is not an inviolate rule," *Uccio*, 940 F.2d at 758 (citation omitted), as it "merely expresses the practice of the courts generally to refuse to reopen what has been decided." *Devilla v. Schriver*, 245 F.3d 192, 197 (2d Cir. 2001) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)); *accord Arizona v. California*, 460 U.S. at 618 ("Law of the case directs a court's discretion, it does not limit the tribunal's power.") (citations omitted).

A court may employ its discretion to apply law of the case where there is a concern that disregard of an earlier ruling may prejudice the party seeking to benefit from the doctrine. *See Uccio*, 940 F.2d at 758.  Prejudice refers specifically to "a lack of sufficiency of notice or a lack of sufficient opportunity to prepare armed with the knowledge that [the prior ruling is not deemed controlling]." *Uccio*, 940 F.2d at 758.  In other words, "where litigants have once

26

battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)).  Accordingly, an earlier decision in the same case "may not usually be changed unless there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Color Tile*, 322 F.3d at 167 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992)).

Here, Relief Defendants are asking the Court to set aside its earlier definitive ruling as to Yin's default.  But to do so would be prejudicial to the SEC, given that the Court announced its determination as to liability over two years ago.  In that opinion, the Court considered and rejected Yin's challenges to the sufficiency of the complaint, concluding that "the complaint sufficiently states an insider trading claim." *Yin*, 2020 WL 6801915 at *3.  Relief Defendants have not provided a valid basis to change the Court's earlier determination of liability: there has been no intervening change of controlling law; there has been no new evidence to contradict the entry of default against Yin; and entry of default against Yin, for reasons described in depth above, does not present a clear error or manifest injustice.  *See also United States v. Halkbank*, No. 15cr867, 2020 WL 4932772, at *10 (S.D.N.Y. Aug. 24, 2020) ("The law of the case doctrine is driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality.").

Relief Defendants counter that Yin's default cannot be the law of the case because the default is not an issue that has 'actually been decided.' (*See* ECF No. 300 at 10 – 12.)  In response to Defendants' arguments, the SEC contends that while 'typical' defaults, such as those

based on a defendant's failure to answer, are generally not deemed to be decisions "on the merits" or "actually decided," a default as a sanction for discovery misconduct is, in fact, a decision on the merits and is considered to have been actually decided.  (ECF No. 288 at 12 – 13.).  While the doctrine of issue preclusion (also called collateral estoppel) is not directly on point, given that the doctrine applies to subsequent legal action between the same entities that were parties in a prior action, case law on issue preclusion is instructive in determining whether it is appropriate to give Yin's default preclusive effect.

The SEC has the better of the argument.  In *In re Snyder*, the appellants appealed an order from the Bankruptcy Court of the Eastern District of New York, which had held that debt stemming from a default judgment entered in a prior Eastern District of New York case was nondischargeable in bankruptcy.  939 F.3d 92, 97 (2d Cir. 2019).  The entry of default was based on the fact that the appellants had "consistently disregarded their discovery obligations as well as multiple Orders of the Court." *Id.* (citing *Murphy v. Snyder*, No. 10 Civ.1513, 2011 WL 4345088, at *1 (E.D.N.Y. July 28, 2011)).  As to whether the default judgment in the district court action could be the basis for collateral estoppel in the subsequent bankruptcy court action, the Second Circuit concluded that "[w]hile a default judgment generally lacks preclusive effect because the underlying merits of the case are not actually litigated, we hold that where, as here, the default judgment is entered as a sanction, it may be afforded preclusive effect when determining the nondischargeability of a debt in a bankruptcy proceeding." *In re Snyder*, 939 F.3d at 100.

In *Snyder*, the court favorably cited the Tenth Circuit's decision in *In re Corey*, 583 F.3d 1249 (10th Cir. 2009), which concerned a similar ruling of dischargeability based on a default in a prior proceeding, in which Corey had obstructed the course of discovery.  That court duly

noted the Supreme Court's instruction in *Arizona v. California* that "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." *Id.* (quoting *Arizona v. California*, 530 U.S. 392, 414).  But the court went further, noting that the portion of the Restatement of Judgments relied upon in *Arizona* "makes clear that the type of 'default' being considered was not a default imposed as a sanction but a default resulting from an affirmative decision not to contest a matter."  *Corey*, 583 F.3d at 1251 (citing Restatement (Second) of Judgments § 27 cmt. e).  Per the Restatement, as cited in *Corey*:

> A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. *The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before.* And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

(emphasis altered.)

Based on this logic, the *Corey* court reasoned that an issue was not 'actually litigated' if it was unraised or uncontested earlier on.  583 F.3d at 1252.  Because Corey had defaulted based on his discovery misconduct, he was precluded from relitigating the underlying issue on which he had defaulted.  *Id.* ("[I]mposing preclusion on Mr. Corey is neither unfair to him nor likely to discourage constructive behavior (such as compromise in litigation); on the contrary, applying preclusion doctrine here is likely to discourage obstructive and delaying tactics.").

While *Snyder* and *Corey* concern collateral estoppel in the context of bankruptcy appeals, their underlying logic about whether a default entered as a discovery sanction is considered to be

"actually decided" is applicable here, where entry of default judgment against Yin for insider trading was vigorously contested, briefed by the parties, and the subject of a thorough discussion by this Court.

### 2.    Relief Defendants As Real Parties in Interest

Second, the Relief Defendants cannot contest the merits of the insider trading claims against Yin because they are not true parties in interest.  To reiterate, a relief or nominal defendant is joined "purely as a means of facilitating collection" of the allegedly ill-gotten gains; he is "merely incidental" to the suit, and has "no interest in the subject matter litigated" because he is not "not a real party in interest."  *Cherif*, 933 F.2d at 414.  "His relation to the suit is merely incidental and it is of no moment [to him] whether the one or the other side in [the] controversy succeed[s]."  *Id.* (quoting *Bacon v. Rives*, 106 U.S. 99, 104 (1882) (quotation marks omitted).

It would be an odd result, then, to permit a nominal defendant to contest the merits of a plaintiff's claim against a defendant.  Relief Defendants emphasize that this outcome raises substantial due process concerns, "in that it endorses the taking of funds from individuals claiming an interest in those funds without giving them an opportunity to challenge the taking." (ECF No. 300 at 12.)  To that end, they cite the Second Circuit's holding in *United States v. Daugerdas*, a criminal forfeiture case in which the court held that "[t]he Due Process Clause does not permit us to hold that a third party is precluded from asserting, in her own right, her entitlement to property she claims is hers, on the ground that she is bound by a determination that the property belonged to someone else, when that determination was made in a separate proceeding in which she was not permitted to participate."  892 F. 3d 545 (2d Cir. 2018).  Setting aside the fact that the statutory context of criminal forfeiture is quite distinct from the civil disgorgement at issue in this case, *Daugerdas* is in line with the outcome here.  Relief Defendants will be affected by a possible disgorgement if, and only if, (1) they have received ill-

gotten gains (2) *to which they have no legitimate claim. Cavanagh*, 155 F.3d at 136 (emphasis added).  Relief Defendants will have ample opportunity to argue that some part of the money in the IB accounts belongs to them and not Yin, insofar as that money was generated from a source unconnected to the insider trading scheme.

Relief Defendants' motion for summary judgment is therefore denied.

### D.      Modification of the Asset Freeze

The SEC, Yin, and the Relief Defendants reserved their rights to apply at any time for a modification of the preliminary injunction.  (ECF No. 26.)  Here, Relief Defendants Su and Yin move to modify the preliminary injunction to release any funds above $71 million, which they argue represents complete disgorgement and 100 percent penalties in the SEC's Dreamworks and Lattice claims.  (ECF No. 350.)  The SEC counters that, under the Insider Trading and Securities Fraud Enforcement Act of 1988, 15 U.S.C. § 78u-1, it is entitled to pursue damages in the amount of three times Yin's total profit from the insider trading scheme, in addition to disgorgement of the trading profits and prejudgment interest.  (*See* ECF No. 353.)  While the SEC has demonstrated success on the merits of Yin's liability, the Court has reserved decision on the total amount of disgorgement and penalties that the SEC may recover from Yin.  Relief Defendants' motion is therefore denied as premature.

**IV.    Conclusion**

For the foregoing reasons, Chaofeng Ji's motion to dismiss is GRANTED.

The SEC's motion for judgment is GRANTED in part and DENIED in part.

Relief Defendants' motions for summary judgment and to modify the preliminary

injunction are DENIED.

The Clerk of Court is directed to close the motions at ECF Numbers 136, 276, 313, and

350.

SO ORDERED.

Dated: March 31, 2023
       New York, New York

_____
              J. PAUL OETKEN
       United States District Judge